UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| 2302 N. TRUMAN ENTERTAINMENT MGMT., LLC, d/b/a Pure Pleasure Boutique, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF PEVELY, MISSOURI, et al., <br><br> Defendants. | Case No. 4:11CV171 HEA |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court Plaintiff's Motion for Preliminary Injunction, [Doc. No. 8]. Defendants oppose the Motion. The Court conducted a hearing on the Motion and arguments were presented. For the reasons set forth below, the Motion is granted.

### Facts and Background[1]

Plaintiffs filed this action pursuant to 28 U.S.C. § 1983 on January 25, 2011, alleging violations of its First and Fifth Amendment rights. According to Plaintiff's Verified Complaint, in mid-2009, Plaintiff initiated research to locate appropriate premises from which to vend a variety of retail and printed materials. In July of 2009,

---

[1] The recitation of facts is taken from Plaintiff's Verified Complaint for Declaratory Judgment..

the vacant building located at 8600 Daniel Dunklin Blvd. was located. This building was deemed to be an appropriate location for the establishment of the proposed business.

Plaintiff contacted counsel and requested that he investigate the applicable regulatory considerations and initiate communication with the City of Pevely, Missouri to address any concerns that the proposed development might have.

Counsel contacted City representatives. Counsel was informed that the property was located within a larger development project that was presumably moving forward and that the City "preferred" that "Pure Pleasure" not be established at the subject location.

In September of 2010, it was noted that the subject property was still sitting vacant. Plaintiff contacted the owner of the subject property, who indicated that the property was on the market, and that he had not been approached by any interested buyers or renters since late 2007.

On October 15, 2010, Plaintiff executed a "lease purchase option" for the property in the names of 2302 N. Truman Entertainment Mgmt., LLC, and Don Kleinhans, personally.

On October 26th 2010, counsel and Kleinhans met with Happy Welch, the Building Commissioner for the City of Pevely. During this meeting, it was explained

in detail that Plaintiff's proposed "mixed" retail use planned for the subject property in Pevely would not sell "adult oriented" magazines, videos, or any sexually explicit media, unlike other "Pure Pleasure" retail facilities in other areas, but that it would comply with the "Adult Oriented Business" legislation in place in the City of Pevely. During this meeting, the attendees reviewed the City Code to verify what definitions and limitations would be applicable to the proposed use, again explaining in detail that Plaintiff's use would not include the sale of any items identified in the City Code as "adult products." Counsel requested Defendant Welch to provide copies of all City of Pevely legislation applicable to the proposed use, which he did. At the conclusion of the meeting, it was determined that the next step would be to submit the City of Pevely 2010 Application for Merchants License. On November 8, 2010, Plaintiff submitted the City of Pevely 2010 Application for Merchants License in the name of 2302 N. Truman, Ent. Mgmt., LLC, to be located at 8600 Daniel Duncan [sic] Blvd.

Written on the application under, "Description of Sales and/or Service at this location," Plaintiff wrote, "Retail Sales, Apparel Shop, Variety Store, Gift Shop including Adult Products other than as defined in section 405.050 of the City of Pevely." Attached to that same application was Plaintiff's Corporation or LLC Registration No. of the Florida Secretary of State: FL0636796, and the proper documentation establishing the Plaintiff Florida LLC was properly authorized to

conduct business in Missouri.

Plaintiff seeks to operate a retail facility selling non-adult, non-sexually explicit, movies (in various formats, DVD, etc.), books, and magazines–which its patrons will view or read off-site. Plaintiff also intends to sell various novelties and personal devices not depicting any specific "anatomical area."

On November 18th 2010, Plaintiff received a letter from Mr. Welch stating, that upon review, the license had been denied "without prejudice," stating the following bases for denial: The area at 8600 Daniel Dunklin Blvd is zoned B-2 High Density Business District and does not allow adult oriented businesses; 2) AOB's are allowed in the I-1 Light Industrial District; 3) Items for sale as defined in Section 210.490 Pevely Municipal Code will classify the use as an adult/sexually oriented business as provided in section 573.528 (1) & (15) RSMo. More than thirty percent of sales qualifies as a sexually oriented business as defined in Section 67.2540RSMo; 4). Section 573.531 RSMo. does not allow a sexually oriented business within 1000 feet of a preexisting school, house of worship, residence, etc, nor are they allowed to be open from 12 midnight to 6 AM.; 5) The City is currently devising a master plan of development for the area that involves this property and has been in discussions with the property owner. Defendant Welch returned the $40 Money Order that was originally attached.

On November 22, 2010, Plaintiff's Counsel sent Defendant Welch a letter stating that Plaintiff's facility was ready for inspection in order to obtain the Certificate of Occupancy and to have the water turned on. The letter also stated that Plaintiff disagreed with the bases asserted for the license denial, and stated: "…there is obviously some confusion and/or misunderstanding.  We are aware that the store is located in a B-2 High Density Business District.  However, although we intend to self limit our customers to those over the age of 18 only, are [sic] store in fact is a boutique and is not an adult oriented businesses defined by either City of Pevely ordinance or Missouri State Law.  Specifically, the store will not be selling any adult oriented "material" as defined by Section 210.490. My clients will not be a "sexually oriented business" as defined by Section 67.2540 Revised Statutes of Missouri as it will not be an "adult bookstore" or an "adult video store" (and will not be selling any adult oriented books, magazines, periodicals, other printed materials, or photographs, films, motion pictures, video cassettes, compact disc, digital video disks, slides, or other visual representations of the sexual nature nor will my client store be an adult cabaret, and adult motion picture or a semi nude model studio or sexual encounter center as defined by Section 573.528.).  Basically, my client's store will be selling lingerie, underwear, and novelties and none of the novelties will visually depict any part of the human

anatomy. Perhaps the city's errors based upon the fact the city is not inspected the store does not know what is actually for sale there." The letter returned the application and the filing fee, and closed with a demand that the license be issued.

On November 24, 2010, Defendant Welch appeared in the early morning and informed Plaintiff that the application for water service had been denied and that the application and deposit were being returned. In response to Plaintiff's inquiries as to what grounds supported the denial of something as basic as water service, Defendant Welch stated that said utilities were denied because the location did not have a business license. Defendant Welch said he was also refusing water and sewer service to the property due to his concern that the business would interpret that to be approval to open.

On November 24th 2010, the subject facility was visited by building official Ken Graves who stated that he was there for an "unofficial inspection," who stated that the reason the water could not be turned on was due to the building being deemed by the City to be an "unoccupied structure." Graves inspected the building and mentioned he "did not see any violations," with the sole request being the installation on the back door of "panic hardware." After cooperatively discussing Plaintiff's request for a fire inspection, Graves stated that "the City needs a better explanation of what we are really trying to do here."

On November 24, 2010, Plaintiff applied for a sign permit that was denied days later. The city inspector stated the sign application for permit was denied based on the direction of Defendant Welch.

Also, on November 24, 2010, Plaintiff set an appointment with the Fire Marshal to come and inspect for Monday, November 29, 2010, at 10:00 a.m. Defendant Welch also wrote Plaintiff's Counsel, on November 24, 2010, to request that Plaintiff submit a new application to clarify the listed uses and exceptions and also stated that Plaintiff would be strictly held to the listed uses as submitted on the application and that anything any different would nullify a merchant's license. It was also stated that, until said new application was submitted and approved, neither an occupancy inspection nor water "turn on" would be effected.

On November 29, 2010, the Fire Marshal inspected the property and stated that "all looked good for approval."

Plaintiff's Counsel wrote Defendant Welch on November 29, 2010, requesting the minutes of the Mayor and Board of Alderman November 18, 2010, meeting at which they decided to refuse Plaintiff's application. Counsel also stated in the same letter that Plaintiff wished to appeal the decision. Plaintiff also requested that the city turn the water on and noticed the city that Plaintiff was incurring damages by Defendants' actions.

On November 30, 2010, Plaintiff picked up the approved Certificate of Occupancy from the Fire Department and posted it on the premises behind the clerk's counter.

On December 2, 2010, Plaintiff opened "Pure Pleasure Boutique Pevely," and placed a temporary sign banner over the existing backlit post sign on the premises.

On December 3, 2010, Agents for the City of Pevely arrived on the property and posted a Notice of Violation on the front door. The Violation was delivered by Defendant Welch and a building official. The notice stated that the store had to close prior to Saturday, December 4, 2010.

On December 4, 2010, Agents of the City of Pevely arrived at the property and wrote the store two Missouri Uniform Citations, one for operating for a business without a license in violation of Pevely ordinance, and one for not obtaining a sign permit required by Pevely ordinance. These Agents stated that they would be back daily with more citations if Plaintiff continued to stay open. Since then, Pevely has issued two additional citations for each day, and continuing. Defendant Welch has threatened Complainant and its employees with fines of $1,000.00/day and 90 days in jail for each of the separate citations.

On December 6, 2010, Plaintiff received a certified letter stating that, based on the City of Pevely's attorney's review, Plaintiff was not properly registered to do

business in the State of Missouri and, as a consequence, the application must be denied without prejudice and that Plaintiff needed to submit another application. The letter also stated that any new license applications would now be "held in abeyance" following a moratorium approved by the Pevely Board of Alderman, at a meeting held December 6, 2010. The gravamen of the "moratorium" was that no business licenses would be issued pending amendments of Section 210.490 and Chapter 605 of the Pevely Code of Ordinances. The letter concluded with a threat that Plaintiff's continued failure to abide by the Pevely City Code would be considered in any future application submitted.

Plaintiff responded to the Citations issued by the City. Copies were sent to the Pevely Municipal Court, the Pevely Board of Aldermen, and the Administrative Hearing Commission.

Plaintiff continues to operate under protest. Plaintiff seeks a preliminary injunction requiring Defendant and its various agents and employees to issue the necessary business license, sign license and/or such other permits and/or license to Plaintiff to allow the operation of said business, while affording constitutionally required safeguards to such processes; and requiring Respondent to provide water and sewer service to Complainant on the same basis as for other similarly situated Pevely businesses. Plaintiff further seeks a preliminary injunction enjoining Pevely from

prosecuting and/or continuing to prosecute Plaintiff and/or its employees for the Uniform Missouri Citations issued to date and which are continuing to be issued.

## Discussion

As the Supreme Court recently emphasized, injunctive relief "is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). The relevant factors to consider when assessing the propriety of preliminary injunctive relief include: (1) the likelihood of success on the merits; (2) the presence or risk of irreparable harm; (3) the balancing of the harms of granting or denying an injunction; and (4) the public's interest. *CDI Energy Services v. West River Pumps, Inc*., 567 F.3d 398, 401 -402 (8th Cir. 2009), citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The party seeking injunctive relief bears the burden of proving these factors. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir.2006).

Plaintiff contends that Defendants' conduct imposes a prior restraint, lacks any legitimate legislative basis or predicate, allows for the exercise of unbridled administrative discretion, lacks adequate procedural safeguards, and is fundamentally unconstitutional both facially and as applied. Defendants respond by arguing that the issues involved herein are merely zoning issues which have been addressed in accordance with the City of Pevely's zoning code.

Defendants argue that Plaintiff's application for a permit was defective in that it improperly listed the applicant as: 2302 N. Truman Ent. Mgmt, LLC d/b/a Pure Pleasure, i.e., not in Plaintiff's true corporate name. Defendants argue the City of Pevely cannot issue a licence to a "non-existent entity not registered." This error, however, does not preclude Plaintiff from litigating its First Amendment claims. In the context of prior restraints on speech or expression, the Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood*, 486 U.S. at 755-56, 108 S.Ct. 2138; see also *FW/PBS, Inc.*, 493 U.S. at 223, 110 S.Ct. 596; *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969); *Freedman v. Maryland*, 380 U.S. 51, 56 (1965). This is because "the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood*, 486 U.S. at 757. A licensing scheme generally must provide narrow, objective, and definite standards to guide the licensing authority, *Shuttlesworth*, 394 U.S. at 151, may only impose a restraint for a specified and reasonable period, and must provide for prompt judicial review. *Freedman*, 380 U.S. at 58-59; *FW/PBS*, 493 U.S. at 228. It must not

vest unbridled discretion in the hands of a government official. *FW/PBS, Inc.*, 493 U.S. at 225-26. *Blue Moon Entertainment, LLC v. City of Bates City, Mo*. 441 F.3d 561, 564 -565 (8th Cir 2006). Thus, the fact that Plaintiff's application contained abbreviations does not preclude this Court's jurisdiction. Of particular significance is the fact that the City has, subsequent to the denial, threatened to impose a "moratorium" on the issuance of licenses, thereby foreclosing Plaintiff from correcting any technical deficiencies in its application for a license.

In First Amendment cases, the Court's primary focus is on the first element: likelihood of success. This is because the remaining factors necessarily turn on whether there has been a showing that Plaintiff's constitutional rights have been violated:

> It is well-settled law that a loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Likewise, the determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to protect constitutional rights. The balance of equities, too, generally favors the constitutionally-protected freedom of expression.

*PhelpsRoper v. Nixon,* 545 F.3d 685, 691 (8th Cir.2008) (internal quotation marks and citations omitted).

To show a likelihood of success on a particular claim, Plaintiff need not "prove a greater than fifty percent likelihood that [it] will prevail," *PCTV Gold, Inc. v.*

*SpeedNet, LLC,* 508 F.3d 1137, 1143 (8th Cir.2007), but rather must only show that the claim provides a "fair ground for litigation," *Watkins,* 346 F.3d at 844; *accord, e.g., Planned Parenthood Minn., N. D., S.D. v. Rounds,* 530 F.3d 724, 732 (8th Cir.2008)(movant must show it has a "fair chance of prevailing").

First Amendment activities generally may be restricted by a zoning ordinance that contains "content-neutral" regulations governing the time, place, and manner of expression, so long as the ordinance is designed to serve a substantial governmental interest and does not unreasonably limit alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986). If, however, the ordinance requires that an individual obtain a license or permit prior to engaging in the protected activity, then the licensing scheme is analyzed as a "prior restraint" on the activity. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223 (1990); *id.* at 238 (Brennan, J., concurring in the judgment); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

In the instant case, in order for Plaintiff to legitimately operate its business at the current location, it must obtain a merchant's license. The ordinance provides no time boundaries within which the City must act on the application, nor does it set out the perimeters of how the City determines whether to issue the license. It appears to the Court that, despite Plaintiff's detailing of the products which it sells, the City has

determined, in its unbridled discretion, that the types of items for sale constitute "adult oriented" materials such that the sale of these items within this district is prohibited. Plaintiffs were not heard on the issue, nor were they given the opportunity to educate the City as to the manner and scope of the merchandise, for example, that the sale of items is strictly for patrons off the premises, that no adult films will be shown on the premises, so as to establish that the governmental interest of any harmful secondary effects of the business may be non-existent. Because of the ordinance's failure to allow any type of hearing to determine whether Plaintiff's activities may be legally curtailed, the City is indeed vested with unbridled discretion to deprive Plaintiff of its constitutional rights. Plaintiff is entitle to a hearing to determine whether, and to what extent it may operate the business at its chosen location.

<u>Conclusion</u>

Based upon the foregoing analysis, Plaintiff's motion for preliminary injunction is granted to the extent that Plaintiffs should be given the opportunity to be heard on the issue of whether a merchant's license should be granted to Plaintiff for the operation of its business at the current location.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. No. 8], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants shall schedule a hearing on Plaintiff's application for a merchant's license before December 31, 2011.

Dated this 2nd day of December, 2011.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE