IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| 2302 N. TRUMAN ENTERTAINMENT MGMT., LLC d/b/a Pure Pleasure Boutique,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF PEVELY, MISSOURI, et al.,<br><br>  Defendants. | Case No. 4:11-CV-00171 HEA |

### DEFENDANTS' RESPONSE TO PLAINTIFF/COMPLAINANT'S MOTION TO ENFORCE SETTLEMENT AND CROSS-MOTION TO ENFORCE SETTLEMENT AND MOTION FOR SANCTIONS AND SUGGESTIONS IN SUPPORT THEREOF

Come now Defendants, City of Pevely, Missouri ("Pevely"), The Honorable John Knobloch, the Mayor of the City of Pevely, Missouri, and Happy Welch, the City Administrator of the City of Pevely, Missouri (collectively referred to as "Defendants"), and for their Response to Complainant/Plaintiff's ("Plaintiff") Motion to Enforce Settlement and Cross-Motion to Enforce Settlement and Motion for Sanctions and Suggestions in Support Thereof, state as follows:

1. Plaintiff has filed a Motion to Enforce Settlement [Doc. 101] which misstates the discussions and agreements reached between the parties in the course of reaching an agreement to settle this matter. Accordingly, Plaintiff's Motion to Enforce Settlement should be denied.

2. Instead, Defendants file herewith their Cross-Motion to Enforce Settlement, and move this Court to enter its Order enforcing and compelling the Settlement Agreement that was reached between the parties.

3. Defendants further move for sanctions, and seek their attorneys' fees and costs incurred for bringing this Motion and for responding to Plaintiff's Motion to Enforce Settlement because Plaintiff's position is without merit, just cause or excuse.  Because Plaintiff has already filed its Motion to Enforce Settlement and subsequently pressed this matter by filing a Request that the Court sustain its Motion or set its Motion for oral argument [Doc. 102], Defendants do not believe that time permits them to comply with the black letter of Rule 11 by affording Plaintiff 21 days to withdraw its Motion.  Similarly, Defendants ask that they be permitted to file their request for sanctions herein, instead of filing a separate Motion for Sanctions since Defendants' bases for seeking sanctions are completely founded upon the filing of Plaintiff's Motion to Enforce Settlement, Plaintiff's pressing that Motion/issue with the Court, and Defendants' Cross-Motion to Enforce Settlement filed herewith.  Accordingly, Defendants ask this Court to consider their request for sanctions with Defendants' Response and Cross-Motion filed herewith.

4. Defendants do not dispute that on October 14, 2013, the parties reached an agreement in principle to settle Plaintiff's claim for damages, wherein, amongst other agreed to terms, Pevely agreed to pay Plaintiff the total sum of $110,000 for all claims for damages, attorneys' fees and expenses in three equal monthly installments to be made on November 18, 2013, December 16, 2013, and January 20, 2014, all as alleged in paragraph 1 of Plaintiff's Motion to Enforce Settlement [Doc. 101].

5. All discussions concerning the settlement of this matter took place between Plaintiff's attorney, Luke Lirot ("Lirot"), and Defendants' attorney, Stephen L. Beimdiek ("Beimdiek"), as Plaintiff's attorney, Robert G. Kister ("Kister"), had previously advised

Beimdiek that Lirot would handle all settlement discussions on behalf of Plaintiffs. See Affidavit of Stephen L. Beimdiek attached hereto as Exhibit A, at ¶ 5.

6. As Lirot's and Beimdiek's settlement discussions progressed on October 14, 2013, Lirot advised during a telephone call that Plaintiff would require as part of any settlement agreement that Plaintiff be "grandfathered" in to be able to continue to operate its business in Pevely in the event that Pevely were to enact any future or further zoning ordinances or restrictions which could seek to prohibit or limit Plaintiff or other similar businesses from operating within the Pevely city limits. See Beimdiek Affidavit, Exhibit A, at ¶ 8.

7. After Lirot proposed this material term of settlement, Beimdiek agreed that Pevely could accept that material term, but further stated that Pevely would insist that Plaintiff could continue to operate its business as it currently exists, without expanding the products or services that it sells and without expanding its facilities, signage or operations. See Beimdiek Affidavit, Exhibit A, at ¶ 12.

8. Lirot agreed to these material terms on behalf of Plaintiff, and Lirot and Beimdiek then agreed that Beimdiek would prepare a Mutual Release and Settlement Agreement to consummate the settlement of this matter and circulate it for review and signature. See Beimdiek Affidavit, Exhibit A, at ¶ 13.

9. Beimdiek's partners, Terrance J. Good ("Good") and Melissa A. Vighi ("Vighi") were in Beimdiek's office on October 14, 2013, during at least two of Beimdiek's telephone conferences with Lirot regarding the settlement of this case. See Beimdiek Affidavit, Exhibit A, at ¶ 9; see also Affidavit of Terrance J. Good, attached hereto as Exhibit B, at ¶¶ 3, 4 and Affidavit of Melissa A. Vighi, attached hereto as Exhibit C, at ¶¶ 3, 4.

10. While Beimdiek did not have his telephone on speakerphone such that Good and Vighi could hear what Lirot was saying during his conversations with Beimdiek, Good and Vighi both attest that Beimdiek relayed to them that Lirot insisted during his telephone conference with Beimdiek that a term of any settlement agreement must include Plaintiff being "grandfathered" in to continue its operations in Pevely and that after a brief consultation with Beimdiek while Lirot was still on the phone, that Beimdiek told Lirot that Pevely could agree to that material term provided Plaintiff did not try to change the nature or scope of its operations. See Beimdiek Affidavit, Exhibit A, at ¶¶ 10-12; see also Good Affidavit, Exhibit B, at ¶¶ 5-7 and Vighi Affidavit, Exhibit C, at ¶¶ 5-7.

11. After Beimdiek conveyed that additional material term to Lirot, Beimdiek told Good and Vighi that Lirot agreed to Defendants' additional term on behalf of Plaintiff. See Beimdiek Affidavit, Exhibit A, at ¶ 14; see also Good Affidavit, Exhibit B, at ¶ 7 and Vighi Affidavit, Exhibit C, at ¶ 7.

12. Because the Agreement in principle was reached in the evening of Monday, October 14, 2013, the next morning Beimdiek sent an email to Lirot and Kister, confirming the basic terms of the settlement agreement reached between the parties. See Beimdiek Affidavit, Exhibit A, at ¶ 15.

13. Beimdiek's October 15, 2013 email setting forth the basic terms of the settlement agreement reached between the parties specifically included the following language regarding the material terms first insisted upon by Plaintiff of Plaintiff being "grandfathered" in and the additional agreed upon terms regarding Plaintiff not expanding its operations:

> In further consideration of the settlement proceeds, Pevely will agree that Pure Pleasure can continue to operate its store on Daniel Dunklin Boulevard and that in the event that Pevely enacts any zoning ordinances or other ordinances or restrictions that would prohibit or limit businesses such as Pure Pleasure from

4

>operating within the Pevely city limits, that Pure Pleasure will be "grandfathered" in, however, it is further stipulated that all agreements in this regard are conditioned upon Pure Pleasure continuing to operate as it does currently, without expanding the products or services that it sells and without otherwise expanding its facilities, signage or operations.

See Beimdiek Affidavit, Exhibit A, at ¶ 16.

14. Beimdiek further stated in his confirming email of October 15, 2013, that if Plaintiff's attorneys should "disagree with any aspect of this brief summary of the basic settlement terms, please advise immediately." See Beimdiek Affidavit, Exhibit A, at ¶ 17.

15. After sending his October 15, 2013 email, Beimdiek then received an email from Lirot at 4:51 PM on Tuesday, October 15, 2013, which did not reject or dispute any of the basic settlement terms set forth in Beimdiek's email sent earlier that day. See Beimdiek Affidavit, Exhibit A, at ¶ 18.

16. Beimdiek then began preparing a Mutual Release and Settlement Agreement, and on Thursday, October 17, 2013, completed that Agreement and sent a copy of it to Plaintiff's counsel by email for their review, comment and approval. See Beimdiek Affidavit, Exhibit A, at ¶ 19; a copy of the Mutual Release and Settlement Agreement Beimdiek sent is attached hereto as Exhibit D and incorporated herein by reference.

17. After sending the Mutual Release and Settlement Agreement to Plaintiff's counsel on October 17, 2013, Beimdiek received an email from Kister on October 18, 2013, advising that Lirot was in charge of finalizing the settlement. See Beimdiek Affidavit, Exhibit A, at ¶ 20.

18. At no time has Beimdiek had any discussions with Kister about any of the material terms of the Mutual Release and Settlement Agreement. See Beimdiek Affidavit, Exhibit A, at ¶ 21.

19. Beimdiek heard nothing further from Plaintiff until October 25, 2013, when Kister sent Beimdiek another email, asking whether the agreement had been finalized. Beimdiek responded to Kister's email on October 25, 2013, advising that he had not heard anything from Lirot with respect to the agreement, to which Kister responded that he was certain that Lirot would be getting back to Beimdiek soon. See Beimdiek Affidavit, Exhibit A, at ¶ 22.

20. Beimdiek then received an email from Lirot on October 28, 2013, advising that he had been involved in trials out of state and not able to respond regarding the Mutual Release and Settlement Agreement, but that he would speak to Plaintiff and get back to Beimdiek "asap!" See Beimdiek Affidavit, Exhibit A, at ¶ 23.

21. Two days later, Beimdiek received an email from Kister on October 30, 2013, advising that "all that needs to happen now is for us to get a signed copy of the settlement document filed with Judge Autrey by the deadline." Kister further advised that he was getting his client's signature and asked Beimdiek whether he anticipated any delay in getting Defendants' signatures on the Agreement. See Beimdiek Affidavit, Exhibit A, at ¶ 24.

22. Beimdiek then responded to Kister on October 30, 2013, asking whether Kister's email meant that Plaintiff had approved the Agreement as drafted with no changes, and further noted that he did not anticipate any delay securing the approval of Pevely to the Agreement, especially if Plaintiff had approved the Agreement as is. See Beimdiek Affidavit, Exhibit A, at ¶ 25.

23. Kister then responded to Beimdiek's email by stating that his client was "coming to my office to sign the agreement tomorrow." At no time did Kister advise that there had been any changes to the Agreement requested by Plaintiff, and that Plaintiff had not approved the

6

agreed upon terms as submitted in the Mutual Release and Settlement Agreement drafted by Beimdiek. See Beimdiek Affidavit, Exhibit A, at ¶ 26.

24. On October 31, 2013, Kister telephoned Beimdiek and advised that he had secured Plaintiff's signature on the Settlement Agreement and asked if he could take the signed Settlement Agreement to Pevely so that it would be able to have it available for signature. Beimdiek advised Kister that he could do so, but further asked that Kister send Beimdiek an electronic copy of the Agreement signed by Plaintiff, which Kister said he would do. See Beimdiek Affidavit, Exhibit A, at ¶ 27.

25. Beimdiek then received an email from Kister's assistant, Callie Nielsen, on October 31, 2013, transmitting a copy of the Mutual Release and Settlement Agreement signed by Plaintiff. See Beimdiek Affidavit, Exhibit A, at ¶ 29.

26. Beimdiek reviewed the signed Settlement Agreement that Kister sent, and noticed for the first time that the signed Agreement completely deleted paragraph 5 of the Agreement Beimdiek prepared, which contained the language concerning the "grandfathering" of Plaintiff's business provided it did not change the scope of its operations. See Beimdiek Affidavit, Exhibit A, at ¶ 30.

27. At no time prior to the signed Agreement being sent to Beimdiek by Kister's office did Plaintiff or its attorneys contact Beimdiek to request that paragraph 5 or any of its language be deleted or revised from the Settlement Agreement. See Beimdiek Affidavit, Exhibit A, at ¶¶ 28, 32.

28. Accordingly, Beimdiek sent an email to Kister and Lirot on October 31, 2013, asking why Plaintiff changed the Agreement and then signed and returned it without ever discussing any changes with Beimdiek. See Beimdiek Affidavit, Exhibit A, at ¶ 33.

7

29. Beimdiek then received an email from Lirot on October 31, 2013, that simply stated, "I thought we eliminated paragraph 5 from the agreement?" See Beimdiek Affidavit, Exhibit A, at ¶ 34.

30. Beimdiek replied to Lirot that there had never been any discussions about eliminating or changing anything in the Agreement and reiterated that he was never told anything other than that the Agreement would simply be signed. Beimdiek further pointed out that he had specifically asked for confirmation that the Agreement was approved "with no changes," and was simply told that the Agreement would be signed. See Beimdiek Affidavit, Exhibit A, at ¶ 35.

31. At that time, Beimdiek further advised that if there was no agreement to settle because of Plaintiff's unilateral deletion of a material term to that Agreement, that Plaintiff advise accordingly. See Beimdiek Affidavit, Exhibit A, at ¶ 36.

32. Lirot then responded that he "though[t] we had communicated that to you." See Beimdiek Affidavit, Exhibit A, at ¶ 37.

33. Beimdiek then received a response from Lirot wherein Lirot claimed that he had sent a "message" to Kister asking that Kister advise of modifications that Plaintiff wanted to request to the Settlement Agreement, even though no such "message" was ever conveyed to Beimdiek. See Beimdiek Affidavit, Exhibit A, at ¶ 38.

34. In the "message" which Lirot claimed he asked Kister to forward, Lirot stated that Plaintiff no longer desired to have any "grandfathering" contained in the Settlement Agreement, despite previously insisting that that would be a material term of settlement which was agreed to by Defendants based upon the additional material term that Plaintiff not be allowed to change or expand its operations. See Beimdiek Affidavit, Exhibit A, at ¶ 39.

8

35. Lirot concluded his email by saying that the parties would have to wait until the next day to discuss these issues further, but Beimdiek never heard from Lirot the next day, and has not heard from Lirot since his October 31st email. See Beimdiek Affidavit, Exhibit A, at ¶¶ 40-41.

36. Beimdiek then received an email from Kister on November 2, 2013, wherein in response to Beimdiek's email of October 31, 2013, to Lirot and Kister questioning the unannounced changes by Plaintiff to the Agreement, Kister claimed it was his "bad" and said he thought that Lirot and Beimdiek had discussed the removal of paragraph 5 before Plaintiff came in to execute it. See Beimdiek Affidavit, Exhibit A, at ¶ 42.

37. The claim by Plaintiff's counsel, Kister, who did not participate at all in the discussion of the terms of settlement, that the discussions regarding the "grandfathering" clause insisted upon by Plaintiff "were not productive" and that "no meeting of the minds occurred" [Doc. 101, ¶ 3] is completely unsupported and, in fact, completely contrary to the record set forth by Defendants in this Response and Cross-Motion. See Beimdiek Affidavit, Exhibit A, at ¶ 43.

38. Not only were there never any further discussions regarding the agreed upon terms of the Settlement Agreement, but at no time did Plaintiff ever assert that those terms would impose restrictions upon Plaintiff in contravention of this Court's previous Orders as asserted by Kister in Plaintiff's Motion [Doc. 101]. See Beimdiek Affidavit, Exhibit A, at ¶ 43.

39. Under Missouri law, the terms of a settlement agreement reached between the parties are enforceable against the parties if the attorneys representing the parties have the authority to settle the case on behalf of their client, which such authority will be presumed to be authorized. Byrd v. Liesman, 825 S.W.2d 38, 39 (Mo. Ct. App. 1992).

40. Absent a client's denial, the authority to settle is presumed to be authorized. Drysdale v. Estate of Drysdale, 689 S.W.2d 67, 71 (Mo. Ct. App. 1985).

41. The authority given to an attorney to settle on behalf of his client may be expressed, implied or apparent. Rosenblum v. Jacks Or Better of America West, Inc., 745 S.W.2d 754, 760 (Mo. Ct. App. 1988).

42. If the authority is express, the client is bound by the settlement unless it is grossly unfair. In Re Marriage of Herndon, 756 S.W.2d 656, 659 (Mo. Ct. App. 1988).

43. If a client challenges the authority of an attorney to settle, the agreement may still be enforced under the doctrine of apparent authority. See Rosenblum, 745 S.W.2d at 762.

44. The only difference in analyzing an attorney's authority to settle in an apparent authority scenario is that apparent authority focuses on what a reasonable party in the position of the party seeking enforcement of the settlement could have thought regarding the attorney's authority based on the attorney's words and actions, as well as the client's conduct. Id. at 760, 762.

45. In this case, it is uncontested that Lirot was one of Plaintiff's attorneys of record in these proceedings and that he contacted Beimdiek on multiple occasions to discuss the settlement of this matter.

46. It is further demonstrated in the record contained herein that Lirot specifically stated that Plaintiff would insist upon a "grandfathering" clause in order to consummate the settlement, that Beimdiek agreed to that clause on behalf of Defendants, provided Plaintiff agreed to not change the scope or nature of its operations, and that Lirot agreed to that condition on behalf of Plaintiff.

47.     An agreement to settle is governed by contract law.  <u>Neiswonger v. Margulis</u>, 203 S.W.3d 754, 760 (Mo. Ct. App. 2006).  As a species of contract of law, an agreement to settle requires a meeting of the minds.  <u>Roberts v. City of St. Louis</u>, 254 S.W.3d 280, 283 (Mo. Ct. App. 2008).

48.     The party requesting specific performance of a settlement agreement has the burden of proving by clear, convincing and satisfactory evidence, that claim for relief. <u>Randall v. Harmon</u>, 761 S.W.2d 278 (Mo. Ct. App. 1988).

49.     In this case, the record is clear that a meeting of minds was reached with respect to the principle terms of the agreement to settle this matter, and more specifically, with respect to the Agreement containing a "grandfathering" clause that was contingent on Plaintiff agreeing that it could not change the nature of its business as it currently operates.

50.     After insisting on the "grandfathering" condition, and then further agreeing that Plaintiff would not try to change the scope or nature of its operations, Plaintiff's counsel never objected when those terms were first confirmed to them by email by Beimdiek.

51.     Similarly, Plaintiff never objected to those terms after the Mutual Release and Settlement Agreement was sent to them.

52.     Instead, for unknown reasons, Plaintiff's attorneys simply deleted paragraph 5 of the Settlement Agreement prepared by Beimdiek which contained the "grandfathering" and continuation of business clause, without ever telling Beimdiek that they had removed that clause or otherwise discussing paragraph 5's removal or any other terms of the Settlement Agreement with Beimdiek.

53.     Plaintiff now attempts to enforce a Settlement Agreement that does not contain all of the material terms that were agreed upon by the parties.  Plaintiff's attempt to do so is without

11

just cause or excuse, and warrants the imposition of sanctions against them, including awarding Defendants their attorneys' fees and expenses incurred in filing this Response to Plaintiff's Motion and bringing their Cross-Motion to Enforce Settlement.

54. Furthermore, Defendants should be awarded their attorneys' fees and costs for having to file their Cross-Motion to Enforce Settlement and this Court should enter its Order requiring Plaintiff to execute the Mutual Release and Settlement Agreement as prepared by Beimdiek since it contains the terms agreed to by the parties.

WHEREFORE, Defendants, City of Pevely, Missouri, The Honorable John Knobloch, the Mayor of the City of Pevely, Missouri, and Happy Welch, the City Administrator of the City of Pevely, move this Court to enter its Order, denying Plaintiff/Complainant's Motion to Enforce Settlement, and further move this Court to enter its Order granting Defendants' Cross-Motion to Enforce Settlement and to enter sanctions against Plaintiff, including awarding Defendants their attorneys' fees and costs for bringing this Motion, and for such further relief as the Court deems just and proper in the premises.

/s/  Stephen L. Beimdiek

Stephen L. Beimdiek     #32745MO
Sarah J. Hugg-Turner    #499162
Terrance J. Good        #25336MO
LASHLY & BAER, P.C.
714 Locust Street
St. Louis, Missouri 63101
*sbeim@lashlybaer.com*
*sturner@lashlybaer.com*
*tjgood@lashlybaer.com*
(314) 621-2939 – Telephone
(314) 621-6844 – FAX

Attorneys for Defendants

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true copy of the foregoing was filed and served on counsel for Complainant via the Court's electronic filing system, this 12th day of November, 2013.

                                            */s/ Stephen L. Beimdiek*